UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANDREW GIANINO,
SARA GIANINO,

     Plaintiffs

vs.                                          Case No. 0:23-cv-60464-AHS

BROWARD AUTOMOTIVE, INC.
f/d/b/a AUDI CORAL SPRINGS,

     Defendant.

_____/

**<u>CORRECTED MOTION TO DISMISS AMENDED COMPLAINT, REQUEST FOR
JUDICIAL NOTICE, MOTION TO STRIKE JURY TRIAL DEMAND AND
INCORPORATED MEMORANDUM OF LAW</u>**

COMES NOW the Defendant, Broward Automotive, Inc., formerly doing business as Audi Coral Springs (hereinafter Broward Automotive or Defendant or dealer), by and through its undersigned counsel and hereby moves this Honorable Court pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to Dismiss Plaintiffs' Amended Complaint with prejudice and in support thereof says:

1.     The Plaintiffs, ANDREW GIANINO and SARA GIANINO (collectively referred to herein as Gianino or Plaintiffs) filed the instant action on March 13, 2023, against Broward Automotive, Inc. alleging violation of the Consumer Leasing Act (CLA), 15 U.S.C.A. section 1667 et seq. The entire claim is founded upon an alleged failure to assist and otherwise facilitate the sale of a motor vehicle pursuant to the terms of a Closed End Motor Vehicle Lease agreement pertinent to the lease end or prior to lease end purchase options provided by Lessor VW Credit Leasing, Ltd/VW Credit, Inc.  The Defendant, Broward Automotive, Inc., asserts that the Amended Complaint fails to state a cause of action upon which relief may be granted, the Defendant is an improper party and, the Plaintiffs lack Title III standing.

2.     The Amended Complaint fails to address any of the legal arguments and legal insufficiencies set forth in the Defendant's Motion to Dismiss the initial Complaint. Instead, the Amended Complaint reaffirms that the claims made fail to state a cause of action upon which relief may be granted.  Further, the newly filed exhibits to the Amended Complaint make plain that Sara Gianino did not exercise any option to purchase the off-lease vehicle and did not participate in any purchase transaction for the off-lease vehicle.  Thus, there is no viable claim under the Consumer Leasing Act.

## Legal Standards

3.     A Motion to Dismiss under Rule 12(b)(6) challenges legal sufficiency of the

allegations in the Complaint.  *See* Federal Rule of Civil Procedure 12(b)(6).  In assessing legal sufficiency, a court is bound to apply the pleading standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  That is, the complaint "must…contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *AM. Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010).  "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  *Glover v. Liggett Corp. Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006).

4.      When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and assume the truth of the plaintiff's factual allegations.  See *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross and Blue Shields of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).  However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 678; see also *Sinaltrainal v. Coca Cola Company*, 578 F.3d 1252, 1260 (11th Cir. 2009).  "[A] formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level."  *Id.*

<u>Request for Judicial Notice of Public Records</u>

5.      "A court's review on a motion to dismiss is [generally] 'limited to the four corners of the complaint.'"  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  However, it may also consider incorporated exhibits, "any documents referred to in the complaint which are central to the claims" and judicially noticed documents and facts.  *Id.*  See also, Fed. R.

Civ. P. 12(b)(6); *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288 (N.D. Alabama,2019). "[W]hen exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.'" *Gill As Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019).

6.      It is appropriate to raise an affirmative defense such as improper party here in a Rule 12(b)(6) motion where the existence of a defense can be judged on the face of the complaint. *Corntordia v. Vendekovich*, 693 F.2d 1073, 1075 (11th Cir. 1982); *Stephens v. State Farm Fire & Casualty Co.*, No. 1:03-cv-3094-JTC, 2004 WL5546250 at *1 (N.D. Da. June 23, 2004) affirmed 149 F. Appx. 908 (11th Cir. 2005).  In considering such a challenge, the court may take judicial notice and consider documents which are public records, which are attached to the motion to dismiss without converting the motion to dismiss into a motion for summary judgment.  This is based on the fact that such documents are "public records that [are] 'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy [can]not reasonably be questioned.'" *Horne v. Potter*, 392 F. Appx. 800, 802 (11th Cir. 2002) (quoting Federal Rule of Evidence 201(b)).

7.      Besides the complaint allegations, a court may consider a judicially noticed fact and, if there is no challenge to authenticity, a document central to a claim by the plaintiff. U.S. ex rel. *Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015).   A court may judicially notice a fact "at any stage of a case and on its own" if the fact "cannot be reasonably disputed because it either is generally known or can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)–(d).

8.      Judicial notice of records of state agencies and state courts generally is appropriate. See *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F. 3d 649651-652 (11th Cir. 2020). (observing that

judicial notice about a state case from the state court's database generally is appropriate); *Dimanche v. Brown*, 783 F.3d 1204, 1213 & n.1 (11th Cir. 2015) (judicially noticing facts in a state agency's statistical report); *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) (permitting judicial notice of state court documents to decide a Rule 12(b)(6) motion); *Long v. Slaton*, 508 F.3d 576, 578 n.3 (11th Cir. 2007) (considering a state agency report submitted with a response opposing a motion to dismiss); *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n. 4 (5th Cir. June 1981) (en banc) ("Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports.").

9.      As can be seen *infra*, the documents from the State of Florida, Department of Highway Safety & Motor Vehicles, Division of Motor Services, Bureau of Dealer Services are central to the Plaintiffs' claim as such documents establish that the New Motor Vehicle Dealer License No. VF102480 for Broward Automotive, Inc. d/b/a Audi Coral Springs expired on December 31, 2021, and the Defendant's new motor vehicle Audi franchise dealer location closed permanently on December 31, 2021.  Further, the State of Florida, Department of State, Division of Corporations records are central to Plaintiff's claims, as they depict that non-party Coral Springs-A-LLC, a Florida limited liability corporation, has done business under the registered fictitious name Audi Coral Springs on and after October 1, 2021.  All such public records demonstrate that the proper Defendant central to Plaintiffs' claims is not Broward Automotive, Inc., formerly doing business as Audi Coral Springs.  Further, this Defendant asserts that these documents are undisputed as the Plaintiff cannot challenge the authenticity of such public records.  Therefore, without converting the instant motion to one for summary judgment, the Defendant requests that this Court take judicial notice of such public records and that this Court consider

these documents attached when considering this Defendant's Motion to Dismiss.[1]

<u>Background Facts</u>

10.     On March 16, 2019, the Plaintiff traveled to the premises of the Defendant, Broward Automotive, Inc., for the purpose of leasing a new 2019 Audi A420T.  More particularly, the Plaintiff entered into a VW Credit, Inc. Closed End Motor Vehicle Lease agreement prepared by Broward Automotive, Inc. for the lease of that certain 2019 Audi A420T, Vehicle Identification Number WAUENAF43KA037982 (the Subject Vehicle) having a total gross capitalized cost of $50,124.23.  A copy of the written VW Credit, Inc. Closed End Motor Vehicle Lease agreement is attached hereto as Exhibit 1. [2]

11.     Although Broward Automotive, Inc. is listed as a lessor (along with the VW Credit Leasing, Ltd./VW Credit, Inc.), the Plaintiffs knew, understood, acknowledged, and agreed upon execution of the Closed End Motor Vehicle Lease Agreement that such Lease Agreement would be immediately assigned in whole to VW Credit Leasing, Ltd. and VW Credit, Inc.[3]  More particularly, the Lease Agreement provided in pertinent part to wit:

> …Lessor will assign this Lease and sell the vehicle to VW Credit Leasing, Ltd.("Assignee") and VW Credit, Inc. helped arrange this Lease.  The terms, conditions, and disclosures in this Lease govern your Lease with us.  Each of you who signs the Lease is jointly and severally liable to us for all Lease obligations.  You are leasing the Vehicle described below (the "Vehicle") from us.  You agree to pay all amounts due under the Lease and fulfill all your obligations under the Lease.  In this Lease, "e" means an estimate.  The Consumer

---

[1] Alternatively, should the Court decline to consider the public records attached hereto, the Defendant requests that the Court convert the motion to dismiss into a motion for summary judgment. Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1267-68 (11th Cir. 2002).

[2] VW Credit, Inc. is an independent third-party finance source affiliated with the manufacturer Volkswagen of America. Audi of America is a wholly owned subsidiary of Volkswagen of America.   Broward Automotive, Inc. is not one and the same as VW Credit, Inc., Volkswagen of America, or Audi of America.

[3] VW Credit, Inc. serves as the administrator of the lease on behalf of VW Credit Leasing, Ltd. All installment payments under the Lease Agreement were due exclusively to VW Credit, Inc./VW Credit Leasing, Ltd.

Leasing Act Disclosures shown below are also terms of this Lease. You are leasing the Vehicle and have no ownership rights in the Vehicle unless you exercise your purchase option.

12.      Paragraph 27 of the Lease further provides as to assignment, to wit:

27. LESSOR'S ASSIGNMENT

… Lessor hereby assigns all right, title and interest in the Lease and the Vehicle and rights the Lessor may have under any guaranty executed in connection with the Lease, with full powers to Assignee to collect and discharge all obligations, any guaranty, and this assignment.

13.      The VW Credit, Inc. Closed End Motor Vehicle Lease Agreement has two provisions that pertain to a purchase option.  More particularly, there is a purchase option at end of lease term reflected at paragraph 9 of the Lease agreement and there is a purchase opportunity before lease term as reflected in paragraph 25(e).  Here, the lease term is for 39 months commencing on March 16, 2019, and expiring on May 16, 2022.  The purchase option at end of lease term provides in pertinent part, to wit:

**PURCHASE OPTION AT END OF LEASE TERM.**  You have an option to purchase the Vehicle at the end of the Lease Term for $25,795.00 plus a purchase option fee of $__N/A__.  The purchase option price does not include official fees such as those for taxes, tags, licenses and registration.

The purchase option prior to lease term at paragraph 24(e) provides in pertinent part, to wit:

**Option to Purchase Vehicle.**  You have the option to buy the Vehicle at any time from a party designated by us.  If you do, you agree to re-register and re-title the Vehicle in your name no later than 30 days from the time you purchase it.  If you fail to do so. We reserve the right to cancel the registration.  Before the scheduled lease end, the price will be the Adjusted Lease Balance (see item 24) plus the item 9 purchase option price minus the item 7(D) Residual Value.  At the scheduled lease end, the price will be the item 9 purchase option price.  At either time, you must also pay the Additional Amounts Due and we will apply the Additional Credits to the amount you owe (see item 25(s)).  Under this Lease, you will only be considered to have purchased the Vehicle if we assign the

Vehicle's title directly to you.[4]

14.     Broward Automotive, Inc. **was** a new motor vehicle dealer as defined by Florida Statute §320.27(1)(c) and **was** licensed by the State of Florida pursuant to Florida Statute §320.27(2) under new motor vehicle Dealer License Number VF/1024870. A copy of the State of Florida Department of Highway Safety & Motor Vehicle, Division of Motor Services, License Certificate is attached hereto as Exhibit 2.

15.     Broward Automotive, Inc. **was** engaged in the business of buying, selling, or dealing in motor vehicles or offering or displaying motor vehicles for sale at wholesale and retail and who serviced and repaired motor vehicles pursuant to a franchise agreement as defined by Florida Statute §320.60(1).

16.     Broward Automotive, Inc. **was** party to a franchise agreement as contemplated by Florida Statute §320.60(1) with manufacturer/distributor Audi of America for the sale and service of new Audi line-make motor vehicles.  Broward Automotive, Inc. did business under the fictitious name, Audi Coral Springs, in Coral Springs, Florida from 2010 through October of 2021.[5]

17.     In November of 2021, Broward Automotive, Inc. terminated its franchise agreement with manufacturer/distributor Audi of America and ceased all operations as a new motor vehicle Audi line-make dealer.  More particularly, on November 8, 2021, Broward Automotive, Inc. filed a petition for Voluntary Relinquishment of [New Motor Vehicle Dealer] License with the State of Florida, Department of Highway Safety & Motor Vehicles.  A copy of the State of Florida, Department of Highway Safety & Motor Vehicles Voluntary Relinquishment

---

[4] Here the allegations of the complaint appear to establish that Plaintiffs sought to purchase of the Subject Vehicle before lease end.  Thus, the Purchase Option Prior to the End of Lease Term would apply together with the formula for Adjusted Lease Balance.

[5] Broward Automotive, Inc. did business as Audi Coral Springs at 5555 North State Road 7, Coral Springs, Florida 33073 until October 2021.

of License is attached hereto as Defendant's Exhibit 3.

18.     On December 31, 2021, the Department of Highway Safety & Motor Vehicles recognized the Defendant's Voluntary Relinquishment of [New Motor Vehicle Dealer] License Number DF/1024870 and affirmed the permanent closing of the dealership location on even date. The Department of Highway Safety & Motor Vehicles Division of Motor Vehicle Services, Bureau of Dealer Services records are attached hereto as Composite Exhibit 4.

19.     The public records of the State of Florida, Department of State, Division of Corporations reflect that fictitious name Audi Coral Springs is registered and owned by non-party Coral Springs-A, LLC, a Florida limited liability corporation effective October 1, 2021.  A copy of the fictitious name filing is attached hereto as Exhibit 5.

20.     Non-party Coral Springs-A, LLC is part of the Lithia Automotive Group.  Non-parties Coral Springs-A, LLC and Lithia Automotive Group are unrelated to Broward Automotive, Inc.  Broward Automotive, Inc. has no affiliation with Coral Springs-A, LLC and has no interest therein.  See Florida Limited Liability Articles of Organization attached hereto as Exhibit 6.

21.     Coral Springs-A, LLC owns and operates an Audi line-make new motor vehicle franchise dealership at 5555 North State Road 7, Coral Springs, Florida 33073 and commenced business operations in November 2021.

22.     The exhibits to the Amended Complaint make plain that on April 28, 2022, Andrew Gianino alone, and to the exclusion of Co-Plaintiff Sara Gianino, entered into a written Retail Purchase Agreement with Coral Springs-A, LLC for the purchase of that certain used 2019 Audi A4 VIN WAUENAF43KA037982 (the Subject Vehicle).  These documents are not signed by the selling dealer.  The purchaser is identified as Andrew Gianino and there is no Co-Buyer.

<u>The Plaintiffs Have Failed to State a Cause of Action Upon Which Relief May Be Granted and</u>
<u>Have Not Adequately Alleged Article III Standing for Their Claims as to This Defendant</u>

23.     Our constitutional framework limits federal courts to deciding "cases" or "controversies".  U.S. Constitution Article III, Section 2.  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed. 2d 635 (2016).  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992).  The Plaintiffs must satisfy three requirements to have standing under Article III of the Constitution: (1) "injury-in-fact"; (2) "a causal connection between the asserted injury-in-fact and the challenged action of the defendant"; and (3) "that the injury will be redressed by a favorable decision." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir.2001) (internal quotation marks omitted) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)). The dispute here is over all three requirements.

24.     The "injury-in-fact" demanded by Article III requires an additional showing when injunctive relief is sought. In addition to past injury, a plaintiff seeking injunctive relief "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir.2001). Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Shotz*, 256 F.3d at 1081; Wooden, 247 F.3d at 1284 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)).

25.     One element of the case-or-controversy requirement under Article III of the United States Constitution is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). It is a threshold question of "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."

*Sims v. Fla. Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1458 (11th Cir. 1989) (en banc). " 'The law of Article III standing ... serves to prevent the judicial process from being used to usurp the powers of the political branches,' and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013); *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Further, "standing requirements 'are not mere pleading requirements but rather [are] an indispensable part of the plaintiff's case.' " *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "Indeed, standing is a threshold question that must be explored at the outset of any case." *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019) (citing *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005)), cert. denied, —— U.S. ——, 140 S. Ct. 900, 205 L.Ed.2d 467 (2020). "In its absence, 'a court is not free to opine in an advisory capacity about the merits of a plaintiff's claim.' " *Id*. (quoting *Bochese*, 405 F.3d at 974). "In fact, standing is 'perhaps the most important jurisdictional' requirement, and without it, [federal courts] have no power to judge the merits." *Id*. (footnote omitted) (quoting *Bochese*, 405 F.3d at 974).

26.     [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)). In other words, to establish standing, a plaintiff must allege that: (1)

it "suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) "the injury is fairly traceable to conduct of the defendant;" and (3) "it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003).

27.     "The party invoking federal jurisdiction bears the burden of proving standing." *Fla. Pub. Int. Rsch. Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004) (quoting *Bischoff v. Osceola Cty.*, 222 F.3d 874, 878 (11th Cir. 2000)). "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1277 (11th Cir. 2006)). "In assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). "When a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and 'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.' " *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).  A plaintiff at the pleading stage, as the party invoking federal jurisdiction, bears the burden of establishing these elements by alleging facts that plausibly demonstrate each element." *Tsao v. Captiva M.V.P. Res. Partners, LLC*, 986 F. 3d 1332, 1337 (11th Cir. 2021).

28.     In this case, Plaintiffs seek actual and statutory damages in addition to injunctive

relief.  Therefore, to have standing, the Plaintiffs must show past injury and a real and immediate threat of future injury at the hands of, or traceable to, this Defendant.  The Plaintiff cannot show either as this Defendant did not exist at the time of the alleged purchase option transaction and no longer exists.

<u>The Defendant is an Improper Party to This Action</u>

29.     This Defendant contests all three elements of standing.  Simply stated, the Plaintiff has alleged no facts that plausibly demonstrate any element of standing as to this Defendant.  As a result, the Complaint should be dismissed.  See *Tsao v. Captiva M.V.P. Res. Partners, LLC,* 986 F. 3d 1332, 1337 (11th Cir. 2021). More particularly, the indisputable facts evinced by public records of the Florida Department of Highway Safety & Motor Vehicles and the State of Florida Department of State, Division of Corporations make plain that Broward Automotive, Inc. was not in business in 2022, the year in which the Plaintiffs' claimed purchase transaction ostensibly occurred as set forth in the complaint.

30.     Simply stated, under these indisputable truths, Broward Automotive, Inc. could not and did not participate in the Plaintiffs' purchase sale transaction in April 2022.  Broward Automotive, Inc. did not facilitate, arrange, or assist the Plaintiffs in exercising a purchase option or in purchasing the off-lease Subject Vehicle identified in the Complaint.  The Plaintiffs never sought to exercise the purchase option with this Defendant, Broward Automotive, Inc.  Broward Automotive, Inc. did not seek to charge or charge the Plaintiffs any amount concerning the purchase option price available in the Lease agreement.  As a result, the Plaintiffs did not suffer any injury in fact at the hand of, or traceable to, this Defendant.

31.     Here, the Plaintiffs' Complaint is devoid of any allegation that the Plaintiffs sought to exercise an option either at lease term or prior to lease term with VW Credit, Inc., or VW Credit

Leasing Ltd. Nor is there a contention that the lessor, VW Credit, Inc., or VW Credit Leasing, Ltd. violated the CLA or otherwise failed to provide accurate disclosure concerning the resulting purchase option price in the lease agreement as required by the CLA.  The Plaintiffs have not contended that the lessor VW Credit, Inc. or VW Credit Leasing, Ltd. refused to sell the subject vehicle to Plaintiffs at the perceived lease end or prior to lease end purchase option price or that VW Credit Leasing, Ltd. or VW Credit, Inc. required the Plaintiffs pay more.  The Plaintiffs never paid anything to Broward Automotive, Inc. as to the alleged purchase transaction.  Further, the Plaintiffs have not alleged the payment of anything to Lessor VW Credit, Inc./VW Credit Leasing, Ltd. at, below, or over and above the perceived purchase option price.  Without competent demonstration by the Plaintiffs that they have suffered from actual or concrete injury **as a result of the conduct of this Defendant**, the claim fails as a matter of law. (Emphasis ours) See *KH Outdoor, LLC v. Clay County, Florida*, 483 F.3d 1299, 1303 (11th Cir. 2007); *Valley Forge Christian College v. American United for Separation of Church and State*, 454 U.S. 464, 472, 192 S.Ct. 752, 758, 70 Led 2d 700 (1982).

<u>The Consumer Leasing Act</u>

32.    The Consumer Leasing Act (CLA) was enacted in 1976 as an amendment to the Truth-In-Lending Act (TILA), 15 U.S.C §1601.  Like the rest of TILA, "the CLA is a disclosure rather than regulatory statute." *Turner v. General Motor Acceptance Corporation*, 180 F. 3d 451, 454 (2nd Cir. 1999).  The CLA extends TILA's credit disclosure requirements to consumer leases; its primary purpose is to "assure meaningful disclosure of the terms of leases…" 15 U.S.C. §1601(b).

33.    In passing the CLA, Congress also delegated to the Federal Reserve Board authority "to issue regulations 'to update and clarify the requirements and definitions applicable to lease

disclosures'" and to publish "model disclosure forms to facilitate compliance with [the statute's] requirements."  15 U.S.C. §1667f(a)(1), (b)(1).  Those regulations, collectively referred to as "Regulation M" are codified at 12 C.F.R. §213.  The Federal Reserve Board also has issued staff commentary to Regulation M.  *See* 12 C.F.R. §213, Supp. I.  Courts are to defer to these regulations and associated commentary when interpreting the CLA.  *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 560, 100 S.Ct. 790, 63 L. Ed. 2nd 22 (1980); *see also Murphy v. Empire of America, FSA*, 746 F. 2d 931, 933 (2nd Cir. 1984).

34.     The Consumer Leasing Act provides statutory damages against "any lessor" who fails to comply with its disclosure requirements.  15 U.S.C. §§1667d, 1640(a)(2).  A "lessor" is defined as "a person who is regularly engaged in leasing, offering to lease, or arranging to lease under a consumer lease."  15 U.S.C. §1667.  Here, there is no credible dispute that VW Credit Leasing, Ltd./VW Credit, Inc. are generally a "lessor" under the CLA, because it regularly offers and engages in consumer leasing.  VW Credit Leasing, Ltd. likewise, is the Lessor as an assignee.  Under the official staff commentary to Regulation M, "an assignee is the lessor for purposes of the regulation in circumstances where the assignee has *substantial involvement* in the lease transaction." 12 C.F.R. §213 Supp I. While "substantial involvement" is undefined, the commentary cites *Ford Motor Credit v. Cenance*, 452 U.S. 155 (1981) where the Supreme Court held that a captive finance company claiming to be "an assignee" of its form motor vehicle finance contracts was actually the original TILA "creditor" because of its substantial involvement in the credit transaction.

35.     *Cenance* involved certiorari review of *Cenance v. Bohn Ford, Inc.*, 621 F.2d 130 (5th Cir. 1980). There, the Fifth Circuit rejected Ford Motor Credit's argument that it was merely

a subsequent "assignee" of its form retail installment contracts, and not the original TILA "creditor," because:

> [e]ach of the dealers had a similar standing agreement with Ford: as a prerequisite for the extension of credit, purchasers were required to submit a credit application to Ford on a form printed by Ford.  If the application met with Ford's approval, Ford would purchase the credit instrument after execution by the dealer and purchasers without further participation or risk on the part of the dealer. *Id.* at 133.

Accordingly, the Fifth Circuit held that "it would be elevating form over substance to hold that [Ford Motor Credit] was anything but an original creditor within the meaning of the Act and Regulation Z. *Id.*  The Supreme Court agreed and affirmed the holding that Ford Motor Credit was the "creditor", because "the sales were contingent upon Ford Motor Credit's approval of the creditworthiness of the buyer," [t]he acceptance of the contract and the assignment became operational simultaneously," and "**the assignment divested the dealer of any risk in the transaction.**" *Cenance*, 452 U.S. at 127-58 (emphasis ours).

36.    These facts show that while the dealer had "arranged for the extension of credit" they never "anticipated financing any of these transactions". *Id.* Only Ford Motor Credit "actually extended the credit." *Id.*  The Supreme Court thus "agree[d] with the Court of Appeals that it would be elevating form over substance" to conclude that Ford Motor Credit was not a TILA "creditor."

37.    Virtually identical facts compel the conclusion here that VW Credit Leasing, Ltd./VW Credit, Inc. is the true lessor of Plaintiffs' Audi lease.  As a Prerequisite for funding the Plaintiffs' transaction, VW Credit, Inc. required Plaintiff to submit a form VW Credit, Inc. credit application through the dealer.  Once VW Credit, Inc. approved their credit application, the Audi lease was finalized for signature, which remained contingent upon financing approval by VW Credit, Inc.  It was only upon when VW Credit, Inc. "accepted" Plaintiff's deal that the Audi

Closed End Motor Vehicle Lease became valid, at the same moment it automatically assigned to VW Credit Leasing, Ltd./VW Credit, Inc. for funding.   As in *Cenance*, VW Credit, Inc.'s "acceptance of the contract and the assignment became operational simultaneously," **and the automatic assignment "divested the dealer of any risk in the transaction."** *Cenance*, 452 U.S. at 158 (emphasis ours).   Even if VW Credit, Inc. had rejected Plaintiffs, the dealer would have no obligation to finance the Plaintiffs' lease – the risk of nonpayment was always going to transfer to VW Credit Leasing, Ltd./VW Credit, Inc. through the form lease.   Without VW Credit, Inc.'s approval and acceptance of the terms of the Plaintiffs' lease there would be no contract at all.[6]

38.     As VW Credit Leasing, Ltd./VW Credit, Inc. is the true Lessor in the transaction, the Defendant herein has no obligation or liability under the Lease as the assignment divested the dealer of any risk in the transaction.   Here, the contract documents make plain that the owner of the Subject Vehicle is VW Credit Leasing, Ltd/VW Credit, Inc. Thus, any notice of intent to exercise either the option to purchase at end of lease term or the option to purchase prior to end of lease term must be directed to the only interested party, VW Credit Leasing, Ltd/VW Credit, Inc. and/or its assignees to the exclusion of the Respondent, Broward Automotive, Inc.   The obligations under the Lease concerning purchase options were those of VW Credit Leasing, Ltd/VW Credit,

---

[6] The *Cenance* case remains competent authority for the proposition that VW Credit Leasing, Ltd./ VW Credit, Inc. is a Lessor in the instant Lease agreement as contemplated by the CLA. Where automobile sales were contingent upon finance company's approval of credit worthiness of buyers, and dealers' acceptance of installment sales contracts and assignment of those contracts to finance company became operational simultaneously, with assignments divesting dealers of any risk in transactions, finance company was "creditor" within meaning of Truth in Lending Act; however, statement on contract notifying buyer of assignment of contract to finance company was sufficient disclosure of finance company's "creditor" status. Truth in Lending Regulation, Regulation Z, §§ 226.1 et seq., 226.2(s), 226.6(d), 15 U.S.C.A. foll. section 1700; Truth in Lending Act, § 103(f) as amended 15 U.S.C.A. § 1602(f). *Ford Motor Credit Co. v. Cenance*, 101 S.Ct. 2239, 452 U.S. 155, 68 L.Ed.2d 744, on remand 666 F.2d 97. See also, Official Staff Commentary on Regulation M 12 CFR 213, supplement I; as amended effective January 1, 2018, 2(h) Lessor.

Inc. alone.  The Defendant had no continuing obligation to participate in any subsequent effort of the Plaintiffs to exercise a purchase option.[7]  The Defendant did not participate in any effort of the Plaintiffs to exercise a purchase option as asserted in the complaint as the Defendant dealership no longer existed.  This Defendant satisfied obligations under the CLA by providing, along with VW Credit, Inc., initial lease disclosures, accurate when made, in accordance with the Act.  VW Credit Leasing, Ltd./VW Credit, Inc. was the sole owner of the Subject Vehicle. VW Credit Leasing, Ltd./VW Credit, Inc. had the sole and exclusive obligation to sell the Subject Vehicle at a price certain upon the successful exercise of such purchase option by an eligible Lessee.  Plain by the terms of the Lease agreement, this Defendant had no continuing right, title, or interest in the Subject Vehicle after execution of the Lease Agreement. The Defendant had no right to bind VW Credit Leasing, Ltd./VW Credit, Inc. or to effectuate the purchase option provisions of the Lease Agreement as to any eligible Lessee. Simply stated, the Defendant has no responsibility for the acts of independent third parties and nonparties (such as non-party Coral Springs-A, LLC who ostensibly assisted the Plaintiffs in the off-lease purchase transaction) to the Lease agreement as asserted by Plaintiffs.  As such the Plaintiffs' claim fails.

<u>The Purchase Option Provisions of The Lease Agreement Comply with The Dictates of The Consumer Leasing Act</u>

39.    The Complaint alleges that the Lessor failed to disclose Plaintiffs' end-of-lease purchase option price, as required by Reg. M § 213.4(i).   The Lease Agreement specifies that the Plaintiffs had the option to purchase their Audi at lease term for $25,795.00 plus a purchase option fee of $__N/A__.  The purchase option price does not include official fees such as those for taxes,

---

[7] The Defendant affirmatively avers that had it remained in business and had the Plaintiffs sought out the assistance of Broward Automotive, Inc. to exercise a purchase option pursuant to the instant Lease Agreement, such Defendant would have complied with the terms of the VW Credit, Inc. lease disclosures in this regard.

tags, licenses and registration.  Further the Lease Agreement specifies that the Plaintiffs had the opportunity to purchase the Subject Vehicle before the scheduled lease end, and the price will be the Adjusted Lease Balance (see item 24) plus the item 9 purchase option price minus the item 7(D) Residual Value.  The Adjusted Lease Balance section of the Lease Agreement specifies the formula used to determine the purchase price before lease end.

40.     Reg. M § 213.4(i) requires:

> A statement of whether or not the lessee has the option to purchase the leased property and, if at the end of the lease term, the purchase price, and, if prior to the end of the lease term, the purchase price or the method of determining the price and when the lessee may exercise this option.[8]

If read in isolation, that language might be viewed as requiring disclosure of the purchase price in the form of a sum certain for any prior to end-of-lease purchase.  But the quoted language must be read in light of the plain language of this provision, in concert with all other provisions of Regulation M which specifically permit the use of formulas and estimates where information is not known at the time the lease is executed. Indeed, that instruction explicitly contemplates that value estimates and formulas may be used as a surrogate for purchase price.  On its face the VW Credit, Inc.'s at lease term purchase option and the prior to end of lease term purchase option satisfies those requirements and the Plaintiffs' claim fails.

<u>Exhibits to the Amended Complaint Negate the Claims of Sara Gianino</u>

41.     The Plaintiffs attach a Retail Purchase Agreement and Retail Installment Sales Contract to the Amended Complaint as Exhibit A.  The Plaintiffs rely upon such composite exhibit to form the basis for the claim made.

---

[8] The Lease Agreement includes a statement that Lessee has the option to purchase the leased property at lease end which explicitly includes "the purchase price" in accordance with Regulation M.

42.     Exhibits attached to the complaint are deemed a part of the complaint "for all purposes, ... including a Rule 12(b)(6) motion*." Griffin Indus. v. Irvin, 496 F.3d 1189, 1205 (11th Cir. 2007)(citing Rule 10(c), Fed.R.Civ.P.).* In addition, in reviewing a motion to dismiss, the court may consider documents attached to the complaint where the plaintiff relies upon the document to form the basis for a claim or part of a claim. *Crenshaw v. Lister, 556 F.3d 1283, 1292 (11th Cir. 2009)*. Dismissal is appropriate if the documents attached to the complaint negate the claims. Id. (citing *Thompson v. Illinois Dept. of Prof'l Regulation, 300 F.3d 750, 754 (7th Cir. 2002)*).

43.     Here the composite exhibits make plain that Plaintiff Sara Gianino did not exercise an option to purchase the Subject Vehicle and did not purchase the Subject Vehicle.  As such, neither this Defendant nor any other person or entity sought to charge Sara Gianino any amounts concerning the purchase of the Subject Vehicle and Sara Gianino was not required to pay and did not pay any amounts to this Defendant or any other person or entity in this regard.  Plainly, the allegations of the amended complaint at paragraphs 16, 18, 19, 23, 24, 25, 42, 43, 45, and 47 are knowingly false as to Plaintiff Sara Gianino.

44.     Under common law a plaintiff cannot sue to recover damages under a contract because it contained a separable unenforceable provision that has no applicability in his or her own case. Common-law notions of actual damage therefore ought to apply.  What Plaintiff Sara Gianino is trying to do here is to make a claim where no claim exists. To do so she has combed through her Lease in search of unlawful provisions: unlawful because they are, in her opinion, unreasonable or undisclosed. Any and all undisclosed provisions or arguably unreasonable provisions create no injury unless they actually figure in the calculation of penalties or other charges as applied to Sara Gianino. Sara Gianino cannot litigate a claimed undisclosed provision that had no impact whatever on her, just on the basis that it would have been unreasonable as to

some hypothetical other lessee.[5]  Thus, this Court should find that a Plaintiff has no standing to litigate the reasonableness of a lease provision that caused him or her no actual injury because it never became applicable to him or her. [9]

45.     Finally, the Plaintiff Sara Gianino does not have standing to challenge the VW Credit Leasing Ltd.'s (Lessor's) alleged failure to accurately disclose the prior to end of term or end of term lease purchase price where the Lease Agreement is terminated, and Plaintiff Sara Gianino never sought to exercise the option to purchase.  *Wiskup v. Liberty Buick, Inc.* 953 F. Supp. 958 (N.D. ILL. 1997).  See also,   *Highsmith v. Chrysler Credit Corp., N.D. Ill.1993, 150 B.R. 997*, affirmed in part, reversed in part 18 F.3d 434, 129 A.L.R. Fed. 767.  For these reasons, the Amended Complaint as to Plaintiff Sara Gianino should be dismissed with prejudice.

<u>Motion to Strike Jury Demand</u>

46.     The Defendant moves this Court to find that Plaintiffs have no right to a jury trial on the claims made and to grant a bench trial.  Plaintiffs have no right to a jury trial because the Plaintiffs expressly waived such rights in the written Closed End Motor Vehicle Lease agreement executed by the Plaintiffs and the Defendant on March 16, 2019.  More particularly, the written Closed End Motor Vehicle Lease agreement provides in pertinent part, to wit:

> (x) **Jury Trial Waiver.  In the event of litigation, concerning any claim or dispute, whether in contract, tort, or otherwise, you and we each agree to waive any right you and we may have to a jury trial, as the law allows.**

47.     Because the Plaintiffs knowingly and voluntarily waived any right to a jury trial,

---

[9] The Third Circuit's reasoning in Miller v. Nissan Motor Acceptance Corp., 362 F. 3d 209 (3rd Cir. 2004) supports this conclusion here that Sara Gianino sustained no injury.  There, Miller argued he had standing to challenge an allegedly unreasonable early termination provision in his automobile lease.  Id at 220.  Nissan countered that there was no injury because it did not apply the early termination provision in assessing a charge to Miller; instead, Nissan opted to derive the charge from Miller's remaining unpaid payments.  Id.  The Third Circuit held there was no injury because Nissan never applied the early termination provision to Miller.  *Id*. at 224, 225.

the Court should find that there is no right to a jury trial on any of the issues in this case and grant a bench trial.  Even if the Plaintiffs were otherwise entitled to a jury trial the contractual waiver clearly applies here as all the claims at issue clearly arose between the Plaintiffs and the Defendant out of or in connection with the lease transaction for the new Audi motor vehicle.

48.     "A party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary." *Bakrac, Inc. v. Villager Franchise System, Inc.*, 164 Fed. Appx. 820, 823 (11th Cir. 2006).  Indeed, courts have consistently upheld jury waivers in agreements similar to the agreement at issue.  See *e.g. Id.* at 823-24; *Rocky Mountain Chocolate Factory, Inc. v. SDMS, Inc.*, No. 06-cv-01212-WYD-BNB 2007 WL4268962 at *7-8 (D. Col. November 30, 2007); *PostNet International Franchise Corp. v. Amercis International, Inc.*, No. 06-cv-00125-PFS-BNB 2006 WL1775599 at *3 (D. Colo. June 26, 2006); *Bonfield v. AAMCO Transmissions, Inc.*, 717 F. Supp. 589, 594-96 (N.D. Ill. 1989); *Smith-Johnson Motor Corp. v. Hoffman Motors Corp.*, 411 F. Supp. 670, 675-77 (E.D. Va. 1975).

49.     "In making this assessment, courts consider the conspicuousness of the waiver provision, the parties' relative bargaining power, the sophistication of the party challenging the waiver, and whether the terms of the contract were negotiable." *Bakrac*, 164 Fed. Appx. at 823-24.  However, these factors are not determinative, and "it is not whether any particular number of factors have been satisfied, but whether, in light of all the circumstances, the court finds the waiver to be unconscionable, contrary to public policy, or simply unfair." *Winiarski v. Brown & Brown, Inc.*, No. 5:07-cv-409-OC-10GRJ 2008 WL1930484 at *2 (M.D. Fla. May 1, 2008); *Allyn v. Western United Life Assurance Co.*, 347 F. Supp. 2d 1246, 1252 (M.D. Fla. 2004).  As one court has noted, the only cases where a jury waiver provision was invalidated "have relied on facts such as inconspicuous fine print or gross disparity in bargaining power." *Rocky Mountain*, 2007

WL4268962 at *7.  The Plaintiffs here cannot claim either of these situations.  The jury waiver, which applies equally to both parties, is conspicuously contained in plain language in the written Closed End Motor Vehicle Lease agreement (Exhibit 1) upon which the Plaintiffs have based their claim.

<u>The Waiver Provision was Written Clearly and Conspicuously</u>

50.    The jury waiver provision was located conspicuously in the written Closed End Motor Vehicle Lease agreement (Exhibit 1) and the Plaintiffs clearly knew of the Lease agreement provisions, on which the claim is based.  Courts have consistently upheld jury waiver provisions written in clear and unambiguous language in the same size font as the rest of the document.  See *e.g. Winiarski*, 2008 WL1930484 at *2 (upholding provision that was "written in clear and unambiguous language in twelve point type and is conspicuously set forth in a separate paragraph with the title 'Waiver of Jury Trial' underlined and is located in the third to last paragraph at the end of the document"); *Rivera v. Aaron Rents, Inc.*, No. 8:07-cv-2190-T-30 TGW 2008 WL638353 at *4 (M.D. Fla. March 5, 2008)(upholding jury waiver written "in the same size font as the rest of the document"); *Murphy v. Cimarron Mortgage Co.*, No. 8:06-cv-2142-T-24 TBM, 2007 WL294229 at *2 (M.D. Fla. January 29, 2007)(waiver was conspicuous since it was in its own separate paragraph and in the same size font as the rest of the document); *PostNet,* 2006 WL1775599 at *2 (rejecting the suggestion that the waiver was not conspicuous merely because "it is contained on the next to last page of the contract; it is not in a distinctive typeface; and does not have a particularized caption summarizing its content").  Further, a party is "charged with knowledge of the provisions incorporated into the contract [the party] executed and cannot derive legal protection from [the party's] unwillingness to read the contract."  *Winiarski*, 2008 WL190484 at *3.

51.     Here, as in *Winiarski*, the waiver provision was set off in a separate paragraph clearly labeled "Jury Trial Waiver" in bold face type (Exhibit 1).  The text of the paragraph was the same size font as the rest of the document and was located on the fourth page of the document. Id.  The waiver clearly and unambiguously states that both parties "waive the right to a jury trial".  As such, the waiver is enforceable as a matter of law.

52.     Trial by jury may be waived in a civil suit by contractual agreement between the parties. *Vista Centre Venture v. Unlike Anything, Inc.*, 603 So.2d 576, 578-579 (Fla. 5th DCA 1992).  "Waivers of the right to jury trial by contract are enforceable and will be upheld." Id.  "A trial court commits error when it chooses to ignore the parties' contractual waiver of a jury trial and orders a common law jury trial unless there is a showing why the waiver should not be enforced." *Gelco Corp. v. Campanile Motor Coach Service, Inc.*, 677 So.2d 952, 952-953 (Fla. 3rd DCA 1996). In *Gelco*, the court quashed an Order of the trial court allowing a jury trial at the plaintiff's request.  The case arose under a commercial lease agreement which provided, "both parties to this agreement hereby waive any and all right to any trial by jury in any action or proceeding arising directly or indirectly hereunder." *Id*.  The court reversed, finding that the granting of a jury trial was error because pursuant to the lease provision, the parties had waived any such right.

53.     In *Credit Alliance Corp. v. Westland Machine Company, Inc.*, 439 So.2d 332 (Fla. 3rd DCA 1983), the Third District Court of Appeal upheld a contractual provision containing a jury trial waiver, despite it being "buried in boilerplate" language.  *Id*.  The *Credit Alliance* court held that the contractual jury waiver was binding and enforceable despite the fact that the party challenging the contract never read or studied the contract.  The court further held that the contractual provision waiving a jury trial was not void as against public policy. Id. See

also *C&C Wholesale Inc. v. Fusco Management Corporation*, 564 So.2d 1259, 1261 (Fla. 2d DCA 1990) (striking jury trial as to signatories to a lease agreement despite plaintiff's demand for jury trial in complaint).

54.     The jury waiver clause in the written Closed End Motor Vehicle Lease agreement (Exhibit 1) was conspicuously placed on the Lease agreement. The title and provision are in boldface type and the Plaintiffs executed such document all of which evince that the Plaintiffs were aware of the jury waiver clause and voluntarily signed the contract agreeing to waive their right to a jury trial.  There is no allegation or contention in the instant case that the Plaintiffs lacked the sophistication or experience to contract for the lease of a new motor vehicle.  In light of precedent, holding that it is clear error for a court to allow a jury trial in the presence of a contractual waiver, *Gelco*, 677 So.2d at 953, and there being no public policy concerns against enforceability, *Credit Alliance*, 439 So.2d at 333, the jury trial waiver clause in the instant agreement is enforceable against the Plaintiffs and a jury trial demand should be stricken from the record and this case should proceed to a bench trial if not otherwise dismissed.

<u>Defendant Requests That This Court Reserve Jurisdiction to Impose Rule 11 Sanctions</u>

55.     "Rule 11 deters attorneys and litigants from clogging federal courts with frivolous filings. It also rewards litigants who admit their mistakes within a 21-day safe harbor period—and penalizes those who refuse." *Huggins v. Lueder, Larkin & Hunter, LLC*, 39 F. 4th 1342, 1344 (11th Cir. 2022). The Eleventh Circuit requires a "two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). Rule 11 sanctions are properly assessed (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no

reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose. *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)), Fed. R. Civ. P. 11(b)(1)-(3). Here, all three are true.

56.     After the filing of the initial Summons and Complaint in this action and before service of the complaint on this Defendant, the undersigned counsel, as counsel for Broward Automotive, Inc. contacted counsel for the Plaintiffs and advised that Broward Automotive, Inc. is an improper party to this action, that it terminated its dealer license and ceased doing business in November 2021 and that it did not participate in any off-lease vehicle purchase/sale transaction involving the Plaintiffs in April 2022.  In furtherance of this advice, the undersigned counsel provided documents from the Florida Department of Motor Vehicles and the Florida Department of State Division of Corporations which included, among other things, detailed licensing, and entity information for Broward Automotive, Inc. as well as fictitious name ownership details for fictitious name Audi Coral Springs.

57.     However, notwithstanding the foregoing, the Plaintiffs failed to dismiss Broward Automotive, Inc.  Broward Automotive, Inc. has been improperly joined in this action.  The impropriety of such joinder is known to the Plaintiffs and counsel for the Plaintiffs and despite this knowledge they seek to pursue knowingly frivolous and meritless claims against Broward Automotive, Inc.  As such, the Complaint alleges no competent facts which would subject Broward Automotive, Inc. to liability or obligation to the Plaintiffs under the Consumer Leasing Act.   The Complaint alleges no wrongdoing and no competent facts connecting Broward Automotive, Inc. with the purchase/sale transaction which is the subject of the Plaintiffs' Amended Complaint.

58.     Here, the District Court can find that the Plaintiffs' Amended Complaint lacked a reasonable factual basis against this Defendant.  Further, the Plaintiffs' legal arguments contained no reasonable chance of success against this Defendant.  Finally, the Plaintiffs pursued a pleading in bad faith and improper purpose having actual knowledge provided by the Defendant prior to the filing of the instant Motion to Dismiss and before service of the Complaint that Broward Automotive, Inc. is an improper party to the claims raised.  As such, the Defendant requests that this Court retain jurisdiction should the Amended Complaint be dismissed to consider and assess sanctions as provided by law.

WHEREFORE, Respondent requests this Honorable Court to dismiss the amended complaint with prejudice and otherwise grant the relief requested for the reasons as more fully set forth herein and retain jurisdiction for Rule 11 considerations and for any further relief that this Honorable Court may deem just and appropriate.

/s/  Kenneth L. Paretti
Kenneth L. Paretti, Esquire
Florida Bar No. 779301
QUINTON & PARETTI, P.A.
1 SE 3rd Avenue, Suite 1405
Miami, Florida 33131
PH: (305) 358-2727
FAX: (305) 358-0779
E-MAIL: kparetti@quintonparetti.com
          lpena@quintonparetti.com

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's ECF Filing System upon Joshua Feygin, Esquire and Darren Newhart, Esquire this 27th day of October 2023.

/s/  Kenneth L. Paretti
Kenneth L. Paretti, Esquire